LEWIS F. STRATTON *vs*. EUROPEAN AND NORTH AMERICAN RAILWAY.

SAME *vs*. HANNIBAL HAMLIN and another, trustees.

Penobscot.    Opinion February 21, 1883.

*Railroads.    Fires set by locomotives.    Trustees.    R. S., c. 51, § § 32, 50, 51.*
*Stat. 1876, c. 123.*

An action was brought for an alleged injury to property by fire, under R. S., c. 51, § 32, which provides: "When a building or other property is injured by fire communicated by a locomotive engine the corporation using it is responsible for such injury." The injury occurred while the road was operated by the trustees named in a mortgage to secure the bondholders and before the mortgage was foreclosed. Subsequently the bondholders organized a new corporation and took possession of the road. No malfeasance or fraud was alleged on the part of any one, and there was no allegation of funds in the hands of the trustees. *Held;*

1. That the new corporation was not liable, because it was not then the owner of the road or using the engine.

2. That the trustees were not the agents of the bondholders, but were operating the road upon their own responsibilities as principals, subject only to the liabilities and obligations imposed by the terms of the trust.

3. That the trustees were not liable for the alleged injury, because R. S., c. 51, § 51, as amended by stat. 1876, c. 123, expressly limits their liability as such, to the moneys received, and their personal liability to malfeasance or fraud.

ON REPORT.

These two actions were for one and the same cause, being for an alleged injury suffered by the plaintiff to his woodland in Mattawamkeag, from fire communicated by a locomotive engine,

accidentally, while passing along its track across his land.    No malfeasance or fraud is alleged or suggested on the part of any one.    The first named action was commenced and writ dated December 2, 1880 ; the last named on October 21, 1881.

A single question was raised for the decision of the full court on law, viz : whether any action can be maintained against either of the defendants in said suits, and if so, against which ?

The opinion states the material facts.

*A. W. Paine*, for the plaintiff.

The plaintiff has been injured in his property.   It is the exact case provided for by R. S., c. 51, § 32.

"Every person for an injury done him in his person, property or immunities shall have a remedy by due course of law." Const. Art. 1, § 19.

This provision is imperative.    *Preston* v. *Drew*, 33 Maine, 558.   Indeed no maxim of the law is more familiar or better preserved in practice from the earliest time than *ubi jus, ibi remedium*.    *Ashby* v. *White*, 2 Ld. Raymond, 953 ; Broom's Maxims, *193, *210, *211 ; *Stearns* v. *A. and St. L. R. R. Co.* 46 Maine, 95.

The counsel in an able argument contended that the new corporation was liable in that it was new only in name, and would prevent circuity of action and needless litigation.    *Walmsby* v. *Cooper*, 11 A. and E. 216 ; *Charles* v. *Alton*, 15 C. B. 62. See also, *Hamlin* v. *Jerrard*, 72 Maine, 62 ; *State* v. *E. and N. A. R. R. Co.* 67 Maine, 479 ; *Bean* v. *A. and St. L. R. R. Co.* 63 Maine, 293 ; 44 Maine, 362 ; 46 Maine, 95.

The relation of principal and agent, for Hamlin and Hayford were really the agents of the bondholders who composed the new company, imposes the liability upon the company.    So, too, would the relation of trustee and *cestui que trust*.    *Pierce* v. *Emery*, 32 N. H. 484 ; 2 Redf. Ry. Cas. 631, 648.    See *Shaw* v. *R. R. Co.* 5 Gray, 162 ; S. C. 16 Gray, 407.

The case at bar is very much of the same nature as that of national banks formed from state banks.    *Bank* v. *Harris*, 118 Mass. 147.    See *Bank* v. *Weeks*, 53 Vt. 119 ; *Langdon* v. *R. R. Co.* 53 Vt. 228 ; *Chaffin* v. *R. R. Co.* 53 Vt. 345.

But if the company are not liable and the action against them cannot be maintained, then that against the trustees must be. *Ubi injuriam, ibi remedium.*

*C. P. Stetson,* for the defendants, cited: Jones, Railroad Securities, c. 23, §§ 653, 656; *Sullivan* v. *P. and K. R. R. Co.* 94 U. S. 810; *Vilas* v. *Prairie Du Chien Ry. Co.* 17 Wis. 497; *Gilman* v. *Fond Du Lac R.* 37 Wis. 318; *Hopkins* v. *Railroad Co.* 2 Dillon, 396; *Morgan* v. *Thomas,* 76 Ill. 120; *Grand Tower M'f'g Co.* v. *Ulman,* 89 Ill. 244; *Ballou* v. *Farnum,* 9 Allen, 47; *Daniels* v. *Hart,* 118 Mass. 543; *Sprague* v. *Smith,* 29 Vt. 421; *Barton* v. *Wheeler,* 49 N. H. 9.

DANFORTH, J. Here are two actions for the same cause, and the question is presented upon a statement of facts, whether either of them can be maintained. They are founded upon R. S., c. 51, § 32, which provides that, "When a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury." The facts agreed show that the European and North American Railway Company was incorporated in 1850 and organized in 1853; that March 1, 1869, it mortgaged its railway, appurtenances and rolling stock to T. Edgar Thompson and Hannibal Hamlin as trustees, to secure bonds issued by the company to the amount of two million dollars. Subsequently Thompson died, and William P. Hayford was legally appointed in his place. Hamlin and Hayford took possession of the road for a breach of the condition of the mortgage, October 1, 1876, and operated it until October, 1880. On October 3, 1877, they commenced proceedings for the foreclosure of the mortgage, which was legally foreclosed October 3, 1880; and on October 13, 1880, the bondholders under the provisions of the statute organized a new corporation, adopting the name of the European and North American Railway, and immediately took possession of the road and have ever since managed it as owner. This corporation is the defendant in the first named action. The fire which caused the injury for which the plaintiff claims to

recover began June 16, 1880, and continued several days. Thus it appears that the injury complained of happened while the trustees were in possession, before the mortgage was foreclosed and before the defendant corporation had any existence as such.

It would seem to be quite evident that a non-existing corporation cannot be the owner or in possession of a railway, or be in the use of an engine, so as to make it liable after it comes into existence for injuries previously accruing. A non-existing body can neither make a contract or be guilty of a tort. Nor is this claimed; but it is said that the trustees who, in fact, were using the engine, were acting for, and were the agents of the bondholders who afterwards became the corporation. This, however, does not diminish the difficulty. They could not thus be the agents of the corporation, for that implies a principal and a contract. The corporation could neither be a principal nor make a contract until it was organized. The bondholders were individuals and if they were liable either individually or collectively, that liability would not be changed by a subsequent organization into a corporation. That could have no effect of itself upon previous individual indebtedness. It might be that not a single bond-holder at the time the injury accrued would become a member of the corporation. That, by the law, is composed of those who were bondholders when the right of redemption was foreclosed, or as many of them as chose to come in. The bonds were negotiable and each of them might have and many of them probably did change hands after the injury and before the foreclosure.

But those who were bondholders at the time of the injury could not be held liable. They were not using the engine either by themselves, servants or agents. There was no such relationship existing between them and the trustees as would render them liable for their contracts or torts, no tests to show that the relationship of principal and agent existed. The trustees were not appointed by the bondholders, but by the original corporation before the bonds were issued. They could not discharge them, they could not fill vacancies, except by the sanction of the court, nor could they control their action except so far as such control shall be consistent with the terms of the trust. R. S., c. 51, § 47, as

amended in 1876, c. 105 ; and § 52 ; and yet these are tests to be applied to show the liability of a principal for the acts of a supposed agent. *Ballou* v. *Farnum,* 9 Allen, 47.

True, the trustees act for the bondholders, but they act for the original corporation as well, and are liable to account to it for their doings. R. S., c. 51, § 51. The legal title to the road is in them and when in their possession, is operated upon their own responsibility as trustees indeed, but controlled only by the terms of the trust as found in the mortgage and the statutes in relation thereto. Even after the foreclosure the new corporation obtains title only by a conveyance from the trustees. R. S., c. 51,.§ 55. They are principals rather than agents, operating the road as an independent body, as trustees, accountable to all persons interested for the faithful discharge of their trust, but not accountable to third persons for their doings in that respect. *State* v. *E. and N. A. R. Co.* 67 Maine, 479 ; *Daniels* v. *Hart,* 118 Mass. 543.

Another ground on which it is claimed to sustain this action against the new corporation is, that it takes the road subject to all the duties and obligations resting upon it, as well as the rights attached to it. R. S., c. 51, § 55. But these duties and obligations are by the express terms of the statute, such as arise from the charter and relate to the future and not the past management of road, or of paying any debts or damages which may have accrued by virtue of any contract or wrong doing by its predecessors. The new corporation takes its title from the conveyance of the trustees as of the date of the foreclosure, and necessarily subject to all prior incumbrances and liens upon the road, but clear of all debts or obligations which rest upon former owners and are not legally liens upon the property. Thus in any view we can take of the case, the new corporation is not liable.

Are the trustees, the defendants in the second action, liable ? This question must also be answered in the negative. It is true they, through their servants, were using the engine which is said to have caused the injury, and for any negligence of those servants would have been liable. *Ballou* v. *Farnum, supra.* But in this case no negligence, or wrong doing, is alleged. The

trustees, though having the legal title to the road and using the engine not as agents but as principals, were still using it as trustees, liable to all the duties and obligations resting upon them as such, and no other, unless arising from personal contract or tort.    These duties and obligations are defined by the mortgage and by the statutes applicable thereto.    It is not pretended that there is any foundation for this suit by reason of anything contained in the mortgage.    In R. S., c. 51, § 50, it is provided that after taking possession of the road and all property covered by the mortgage, they shall " have all the rights and powers and be subject to all the obligations of the directors and corporation of such road."   If this were all, they would be liable in this suit, for such an obligation is imposed upon the corporation, as held in *Daniels* v. *Hart*, 118 Mass. 543.    But in the next section we find their duties more fully defined.    In this section, as amended by the statutes of 1876, c. 123, they are required to " keep an accurate account of the receipts and expenditures of such road, and exhibit it, on request, to any officer of the corporation, or other person interested.    They shall, from the receipts, keep the road, buildings and equipments in repair, furnish such new rolling stock as is necessary, and the balance, after paying running expenses, shall be applied to the payment of any damages arising from misfeasance in the management of the road, and after that according to the rights of the parties under the mortgage.    They shall not be personally liable except for malfeasance or fraud."    Thus their liability as trustees is limited by the amount of money received, and their personal liability to " malfeasance or fraud."    It is possible that in the proper process, under an allegation of receipts beyond what is necessary to liquidate prior claims, the trustees might be required to appropriate enough to pay this claim, either as an incident to and a part of the running expenses, or as " damages arising from misfeasance in the management of the road."   But in this process there is no such allegation, nor any of " malfeasance or fraud." The suit therefore does not rest upon any liability of the defendants, personally or as trustees.

But, says the counsel, it is a "legal maxim that for every right there is a remedy," and therefore one of these actions must be maintainable. The maxim we admit in its full force, but the conclusion does not follow. In the legal sense there is no difficulty about the remedy, which is a "judicial means of enforcing a right or redressing a wrong." The trouble here is in establishing the right. The right to redress for such an injury as is here complained of, is given by the statute and by that alone. A railroad corporation in the exercise of its chartered and legal rights, without negligence, is not responsible for consequential damages except so far as they are given by statute, and when given it must necessarily include some agent who is accountable; otherwise the injury is one which must be borne where it falls. Here the statute gives the right against a specified corporation. What the statute gives it may take away. If then, the corporation which by the statute would be liable, has withdrawn and the road, as in this case, is operated by parties whom the legislature says shall not be liable, then what would have been a right but for the withdrawal, is not so now. It is not the remedy alone which fails, but the right also.

The principle involved here is the same as that in *State* v. *E: and N. A. R. Co. supra*, in which at the close of the opinion it is said, "This corporation cannot be held, and, for the act alleged, as the statute now stands, we do not see how any person or party can be."

*In each case, plaintiff nonsuit.*

APPLETON, C. J., VIRGIN and SYMONDS, JJ., concurred.

WALTON, BARROWS and PETERS, JJ., did not sit.